**STATE of Utah, Plaintiff and Appellee,**

v.

**Norman E. REED, Defendant and Appellant.**

No. 910740–CA.

Court of Appeals of Utah.

Oct. 22, 1992.

John T. Caine (argued), The Public Defenders Ass'n of Weber County, Inc., Ogden, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., and Marian Decker, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before BILLINGS, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant Norman E. Reed appeals his bench trial convictions of rape, in violation of Utah Code Annotated section 76–5–402 (1990) and forcible sexual abuse, in violation of Utah Code Annotated section 76–5–404 (1990), claiming that there was insufficient evidence to support the verdict. We affirm.

## BACKGROUND

We recite the facts in the light most favorable to the verdict. *State v. Johnson,* 821 P.2d 1150, 1153 (Utah 1991). On the night of October 14, 1989, Reed was at a late night party in Ogden, Utah. That same evening, the victim was at the home of a friend. At approximately 2:30 a.m., she asked her friend's brother and her cousin to walk her home. A few blocks away the trio stopped at the "after-hours" party which Reed was attending, and one of the men went inside to get his brother.

While waiting outside, the victim talked with Reed, who used to date her mother. The victim asked Reed if he knew anyone who could give her a ride home. Replying

that he did not have a car, Reed offered to ask a friend to give her a ride and returned inside to talk to his friend. The two men originally accompanying the victim left because they believed she had arranged for a ride.

Reed reappeared from the party and told the victim that his friend who lived nearby would give her a ride home. The two then walked to the apartment building where Reed's friend allegedly lived. Reed led the victim into the building and opened the door to an unlocked apartment.

After a short conversation inside the vacant apartment, Reed stopped the victim as she turned to leave. He then grabbed both of the victim's wrists and dragged her into another room which was furnished with only a mattress. Following a brief struggle, Reed overpowered the victim and raped her. Defendant withdrew prior to ejaculation and the victim felt his semen on her leg.

The victim eventually escaped and ran back to the apartment building where the "after-hours" party continued. Noticing her uncle's car parked outside, the victim asked someone to go inside and get him. When her uncle appeared, the victim told him what had happened. Shortly thereafter, the victim and her uncle encountered a police officer and the victim described the incident.

The officer initially searched for Reed but was unable to find him. The officer next took the victim to the rape scene where he conducted a brief search for evidence. He then drove the victim to McKay–Dee Hospital, arriving at approximately 6:00 a.m.

Dr. Scott Hansen examined the victim and evaluated her behavior as consistent with other rape victims he had examined. While Dr. Hansen found no signs of external bruising, he did find signs of recent trauma to the victim's vulva, including swelling and tenderness. Dr. Hansen collected specimens which he provided to James Gaskill, the director of Weber State College's Crime Laboratory, for testing. The specimens showed the presence of se-men from someone whose blood type was A or O. Reed is type O.

Police arrested Reed two and a half months later on December 31, 1989. Reed admitted to the arresting officer that he had walked the victim part of the way home, but denied raping her. In support of his claim of innocence, Reed's girlfriend testified that he had arrived at their home by 3:00 a.m. on the night of the rape.

Following a one day bench trial, the trial court found Reed guilty of rape, a first degree felony, and forcible sexual abuse, a second degree felony. On appeal, Reed claims that the trial court committed two reversible errors. First, Reed claims his alibi and the insufficiency of the prosecution's evidence provide a reasonable alternative hypothesis which supports his innocence rather than his guilt. Second, Reed claims that the State's failure to disprove his alibi must have created a reasonable doubt. Essentially, both of Reed's claims are assertions that the State's evidence was insufficient to support his convictions.

## ANALYSIS

This court has limited authority to review a conviction on the ground asserted. *See* *State v. Moore*, 802 P.2d 732, 738 (Utah App.1990). The supreme court has stated: "When reviewing a bench trial for sufficiency of evidence, we must sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.'" *State v. Goodman*, 763 P.2d 786, 786 (Utah 1988) (quoting *State v. Walker*, 743 P.2d 191, 193 (Utah 1987)).

Applying this standard, we find that the evidence was sufficient to support Reed's convictions. Reed has failed to show that his convictions were against the clear weight of the evidence. Rather, he has merely shown that the prosecution and defense disagreed on many of the crucial facts. Ultimately, it is the province of the trier of fact to determine which testimony and facts to believe and what inferences to draw from those facts. *State v. Bagley*, 681 P.2d 1242, 1244 (Utah 1984).

The trial court, sitting as the finder of fact, recognized that standing alone, the circumstantial evidence in this case was insufficient to establish beyond a reasonable doubt that Reed committed the crimes. However, while circumstantial evidence was insufficient to prove Reed's guilt, it also failed to exonerate him. Furthermore, the trial court did not need to rely solely on circumstantial evidence because it also had the benefit of an eyewitness, the victim. The victim unwaveringly testified that Reed raped her.

In his defense, Reed presented an alibi. His girlfriend testified that Reed arrived at home by 3:00 a.m. If this statement were true, it would have been difficult, though perhaps not impossible, for Reed to have committed the crime within the time frame claimed by the victim.

The trial court, however, found Reed's alibi questionable. The court expressed doubts about the believability of the girlfriend's testimony. As the trial court noted, none of the witnesses, with the exception of Reed's girlfriend, was sure of the exact timing of the events. Furthermore, the court found several inconsistencies between Reed's statements when arrested and his testimony at trial.

Ultimately, the court believed the victim's testimony that Reed raped her. The court made this decision based on an assessment of the credibility of the witnesses. Because the trial court had the opportunity to view these witnesses and weigh their credibility, we defer to its findings unless the record demonstrates clear error. *Bagley*, 681 P.2d at 1244; *State v. Walker*, 743 P.2d 191, 192 (Utah 1987). This appellate approach is consistent with the supreme court's directive that it is not the function of appellate courts "to determine the credibility of conflicting evidence or the reasonable inferences to be drawn therefrom." *Bagley*, 681 P.2d at 1244.

Because Reed's conviction rests on an assessment of the credibility of the witnesses, we determine that the trial court did not commit clear error in finding the victim's testimony to be credible and in rejecting the testimonies of Reed and his girlfriend. The record provides sufficient evidence to support Reed's conviction. Therefore, we affirm.

BILLINGS and ORME, JJ., concur.