Certiorari Denied, April 14, 2011, No. 32,919

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2011-NMCA-048

Filing Date: March 15, 2011

Docket No. 30,095

STATE OF NEW MEXICO,

      Plaintiff-Appellant,

v.

KOULUNGJIM NANCE,

      Defendant-Appellee.

APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Fernando Macias, District Judge

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Farhan Khan, Assistant Attorney General

for Appellant

Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender

for Appellee

OPINION

VANZI, Judge.

{1}    The State appeals the district court's decision to grant Defendant's motion to suppress evidence of Defendant's blood alcohol level as the fruit of an unconstitutional warrantless home arrest. Because the dissipation of alcohol is an exigent circumstance and police actions in this case were reasonably tailored to the exigent circumstances, we reverse.

BACKGROUND

1

**{2}** The facts of this case come from the undisputed testimony of two witnesses: Steve Chavez, whose truck was hit by Defendant, and Officer Askin, who responded to Chavez's 911 call. The district court accepted the evidence as undisputed, observing that "the testimony that was provided by both of the witnesses is, from the court's perspective, . . . what occurred."

**{3}** Chavez testified that he was leaving a local business when he observed Defendant's vehicle collide with his vehicle in a parking lot. When Chavez confronted Defendant, he detected a strong odor of hard liquor coming from Defendant. Chavez asked for Defendant's identification and insurance information, but Defendant indicated he did not have any. Chavez became upset and told Defendant to get away from him because Chavez was angry. Defendant returned to his vehicle and drove off.

**{4}** Chavez testified that Defendant then drove out of the parking lot in front of oncoming traffic. Chavez decided to follow Defendant and called 911. He observed Defendant swerving into oncoming traffic, pulling out in front of traffic, speeding, and running stop signs. After about three minutes, Defendant arrived at his home and went inside. Chavez parked across the street and waited for the police, who arrived within five minutes.

**{5}** Officer Askin was the first officer to arrive and the only officer to testify at the suppression hearing. Upon arriving, Askin obtained Chavez's account of the facts. Several minutes later, additional officers arrived. Askin directed the officers to try to make contact with Defendant. Askin testified that there was a "pretty good delay of somebody coming to the front door with officers knocking on the door [and] identifying themselves." Askin testified that after about fifteen minutes Defendant came out of his house. When asked how police got Defendant to come out of the house, Askin responded that he did not "know what they said." Defendant subsequently blew a 0.29 and 0.27 on a breathalyzer test.

**{6}** After hearing the testimony and argument, the district court indicated that, since the facts were not contested, it was faced only with the legal question of whether the warrantless arrest was constitutional. The court found that the arrest occurred at the home. Relying on *Howard v. Dickerson*, 34 F.3d 978 (10th Cir. 1994), the district court observed that such an arrest would be invalid absent probable cause and exigent circumstances. The court also noted that the evidence presented "would have given any law enforcement the probable cause to proceed with a warrant."

**{7}** The district court then turned its attention to the issue of exigent circumstances, quoting language from *Howard*, suggesting that lesser crimes require greater showings of exigent circumstances. The court appears to have generalized this into a requirement that the exigent circumstances must be related to a felonious action. However, in the court's view, DWI was a minor offense. Citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984), the district court also rejected the idea that dissipation of blood alcohol level could serve as an exigent circumstance. Again quoting *Howard*, the court indicated that minor offenses do not

2

justify warrantless home arrests. The court concluded that the officers were required to obtain an arrest warrant for Defendant.

**{8}** Because the officers had not obtained a warrant and the district court did not believe exigent circumstances existed, the court granted Defendant's motion to suppress. A final order was entered granting the motion to suppress. The order contained no findings of fact or conclusions of law. This appeal timely followed.

## DISCUSSION

### Standard of Review

**{9}** "Appellate review of a motion to suppress presents a mixed question of fact and law." *State v. Herrera*, 2010-NMCA-006, ¶ 7, 147 N.M. 441, 224 P.3d 668, *cert. denied*, 2009-NMCERT-012, 147 N.M. 600, 227 P.3d 90. Here, the district court concluded that the facts were not contested, so we review only the district court's application of law to those facts. *See id.*

**{10}** The State argues that the district court erred in granting Defendant's motion to suppress because (1) substantial evidence did not support the finding that police had entered Defendant's home, (2) the district court failed to consider whether the encounter between police and Defendant was consensual, and (3) the conclusion that no exigent circumstances existed was error. Because we hold that exigent circumstances justified the officer's actions and therefore reverse the district court's ruling, we do not address the State's first two arguments.

**{11}** As a preliminary matter, we observe that Defendant's arguments to the district court were limited to the violation of his rights under the Fourth Amendment of the United States Constitution; he did not argue that the New Mexico Constitution provides greater protection. Our review on appeal is therefore limited to Fourth Amendment standards. *See State v. Jason L.*, 2000-NMSC-018, ¶ 9, 129 N.M. 119, 2 P.3d 856 (limiting review of claim only under the Fourth Amendment when no argument is made on appeal that the New Mexico Constitution afforded the defendant greater protection than the United States Constitution).

**{12}** "[T]he warrantless arrest of one suspected of committing DWI is valid when supported by both probable cause and exigent circumstances." *City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 16, 148 N.M. 708, 242 P.3d 275. The same standard also applies to warrantless entries into the home. *See Payton v. New York*, 445 U.S. 573, 590 (1980). We have defined exigent circumstances as "an emergency situation requiring swift action to prevent imminent danger to life or serious damage to property, or to forestall the imminent escape of a suspect or destruction of evidence." *State v. Gomez*, 1997-NMSC-006, ¶ 39, 122 N.M. 777, 932 P.2d 1 (internal quotation marks and citation omitted).

### DWI Is Not a Minor Offense

3

**{13}** In coming to its conclusion that there were no exigent circumstances and thus a warrant was required, the district court relied primarily on *Howard*, 34 F.3d at 982 (articulating that the warrantless arrest in a person's home for a minor traffic violation was an unreasonable seizure under the Fourth Amendment), and *Welsh*, 466 U.S. at 753 (stating that the exigent circumstances exception in the context of a home entry "should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed").

**{14}** In *Howard*, a motorist was arrested at home for careless driving and leaving the scene of an accident, misdemeanors carrying a maximum fine of $300 or ninety days imprisonment or both. 34 F.3d at 982. Examining the arrest, the Tenth Circuit noted that "absent exigent circumstances, New Mexico and federal law require a warrant before arresting an individual at home for a misdemeanor." *Id.* at 981. The court reasoned that the existence of an exigency was related to the gravity of the underlying offense, noting that "[w]hen the underlying offense is extremely minor, a warrantless entry is rarely reasonable." *Id.* at 982. Following the reasoning in *Howard*, the district court in this case determined that, because Defendant had only been charged with misdemeanor DWI, the underlying offense was minor. Consequently, the district court appears to have concluded that there could be no exigent circumstances and that as a result, "a warrantless home arrest cannot occur on this law."

**{15}** This line of reasoning from *Howard* and *Welsh* relied upon by the district court, however, is foreclosed by the New Mexico Supreme Court's recent decision in *Martinez*. At the outset, we note that when Defendant's arrest occurred in February 2009, the misdemeanor arrest rule for DWI's was still in effect in New Mexico. The Supreme Court abolished the misdemeanor-arrest rule for purposes of analyzing the validity of a warrantless arrest for DWI in June 2010, several months after the district court had entered its order in this case. *City of Santa Fe v. Martinez*, 2010-NMSC-033, ¶ 16, 148 N.M. 708, 242 P.3d 275. This becomes important because the district court relied on gravity of the offense element as set forth in *Howard* and *Welsh* without the benefit of the analysis now found in *Martinez*. We explain.

**{16}** In *Martinez*, a witness observed an apparently drunk man drive off in a van. *Martinez*, 2010-NMSC-033, ¶ 2. The witness called the police, giving them a description of the van and its license plate number. *Id.* The police went to the address of the van's registered owner where they found the van. *Id.* The van's engine was still warm. *Id.* Police rang the door bell several times and could see a man staggering around in the house. *Id.* The man eventually unlocked the door, and police entered and arrested him. *Id.*

**{17}** At trial, the van's driver filed a motion to suppress, arguing that, because police had not witnessed the crime and the crime was a misdemeanor, an arrest warrant was necessary. *See id.* ¶ 4. The district court agreed and dismissed the case. *Id.* Our Supreme Court reversed, holding that "the misdemeanor arrest rule does not apply to DWI investigations." *Id.* ¶ 1. In reaching this result, the Court stated that "[t]he crime of DWI as defined by our Legislature is not a 'minor crime.'" *Id.* ¶ 13. The Court then reasoned that the "compelling public interest in eradicating DWI occurrences and [their] potentially deadly consequences"

4

justified treating the crime of DWI as a felony. *Id.* The Court reached this holding despite the fact that not all DWI offenses were felonies:

> Although a DWI offender who has had less than three convictions would only be guilty of a misdemeanor, such a classification makes no difference in the severity of the offense's consequences, nor does it dilute the public's concern; a first DWI or subsequent offense can have the same deadly results as a fourth offense. Further, an officer investigating a DWI may not be privy to the suspect's criminal record and thus, may not know if he or she is investigating a misdemeanor or a felony.

*Id.* ¶ 14. In light of this language, the district court's premise that DWI is a minor crime is not tenable, and its conclusion that there could therefore be no exigent circumstances is error. We are not alone in reaching this result. *See, e.g.*, *People v. Wehmas*, 2010 WL 4812985, *5 (Colo. Nov. 22, 2010) (en banc); *State v. Robinson*, 163 P.3d 1208, 1212-13 (Idaho Ct. App. 2007); *City of Kirksville v. Guffey*, 740 S.W.2d 227, 229 (Mo. Ct. App. 1987); *People v. Odenweller*, 527 N.Y.S.2d 127, 129-30 (App. Div. 1988); *but see Hopkins v. Bonvicino*, 573 F.3d 752, 769 (9th Cir. 2009), *cert. denied*, ___ U.S. ___, 130 S. Ct. 2342 (2010).

**Dissipation of Alcohol Does Not Automatically Justify a Warrantless Home Entry**

**{18}** Although our Supreme Court in *Martinez* determined that the misdemeanor arrest rule did not apply to DWI, the Court was careful to note that DWI arrests were still constrained by the constitutional probable cause inquiry of felony warrantless arrests. 2010-NMSC-033, ¶ 14. Assuming, without deciding, that Defendant did not voluntarily leave his house, we are squarely faced with the question of whether the police actions here violated the Fourth Amendment.[1] Because the "physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed[,]" warrantless home entries are ordinarily presumed unreasonable. *Payton*, 445 U.S. at 585 (internal quotation marks and citation omitted). However, there are several exceptions to this rule, including the presence of exigent circumstances. *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct. App. 1986), *superceded on other grounds by constitutional amendment as stated in State v. Wagoner*, 2001-NMCA-014, ¶¶ 34-35, 130 N.M. 274, 24 P.3d 306. The dissipation of alcohol has frequently been cited as an exigent circumstance. *See, e.g.*, *Schmerber v. California*, 384 U.S. 757, 770-71 (1966).

**{19}** Perhaps because reasonableness is the touchstone of the Fourth Amendment inquiry, courts have resisted fashioning per se rules authorizing warrantless home entry based only

---

[1]An arrest outside the home can require a warrant if the defendant's exit was coerced. *See* 3 Wayne R. LaFave, *Search and Seizure* § 6.1(e) (4th ed. 2010). Whether that occurred here is not before us on appeal as the State concedes there is "little evidence in the record demonstrating whether or not Defendant's encounter with law enforcement was consensual." Accordingly, we will not disturb the district court's finding in this regard. *See State v. Flores*, 2008-NMCA-074, ¶ 13, 144 N.M. 217, 185 P.3d 1067 (holding that the state bears burden of proving voluntariness of consent).

upon the dissipation of alcohol. For example, while the United States Supreme Court in *Welsh* stated that "a warrantless home arrest cannot be upheld simply because evidence of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant," it was careful to repeatedly qualify this statement as applying only in light of the fact that Wisconsin had chosen to classify a first offense DWI as a non-criminal civil forfeiture offense for which no imprisonment was possible. *Welsh*, 466 U.S. at 754. Similarly, while the United States Supreme Court in *Schmerber* approved of a warrantless blood test due to exigent circumstances, which included the dissipation of blood alcohol, 384 U.S. at 770-71, the Court explicitly limited the decision to the facts, noting that "[t]he integrity of an individual's person is a cherished value of our society" and that the holding "that the Constitution does not forbid the State's minor intrusions into an individual's body under stringently limited conditions in no way indicates that it permits more substantial intrusions, or intrusions under other conditions." *Id.* at 772; *see also State v. Richerson*, 87 N.M. 437, 441, 535 P.2d 644, 648 (Ct. App. 1975) (recognizing that, in addition to dissipation of alcohol, *Schmerber* also requires a valid arrest and probable cause before a warrant may be dispensed with).

**{20}**     We have previously addressed the question of whether the metabolization of alcohol created an exigent circumstance. In *Copeland*, a drunk driver struck and killed a police officer in a hit and run accident. 105 N.M. at 29, 727 P.2d at 1344. Police developed a description of the vehicle from evidence found at the scene of the accident, and the vehicle was found at a nearby motel. *Id.* at 29-30, 727 P.2d at 1344-45. Officers traced the vehicle to a specific room, but nobody answered when the officers knocked on the door. *Id.* at 30, 727 P.2d at 1345. It had been about two-and-one-half hours since the accident, and officers were concerned that they might lose their opportunity to obtain evidence of whether the driver was intoxicated. *Id.* Police broke the chain lock on the door, entered the room, and arrested the defendant, who subsequently registered a blood alcohol level of approximately 0.20. *Id.*

**{21}**     A jury convicted the defendant of homicide by vehicle and driving while intoxicated. *Id.* at 29, 727 P.2d at 1344. On appeal, this Court affirmed, holding that probable cause and exigent circumstances existed. *Id.* at 29, 31-32, 727 P.2d at 1344, 1346-47. We reasoned that while police waited for a warrant, "the alcohol thought to be in defendant's system would be metabolizing," and that "based on the destruction of evidence rationale alone, the trial court was warranted in finding exigent circumstances." *Id.* at 31-32, 727 P.2d 1346-47. Although we went on to note that when "the other facts of this case are added, the exigency becomes even more compelling," *id.* at 32, 727 P.2d at 1347, we did not expressly relate those additional facts to the definition of exigent circumstances, and it is not obvious that it would be possible to do so. We recognize that in this case, a police officer had been killed, which speaks to the gravity of the offense, a factor weighed by the Court in *Welsh*.

**{22}**     *Copeland* is at least somewhat susceptible to a reading that the dissipation of alcohol by itself is sufficient to justify the warrantless entry of a home. However, when *Copeland* was decided, the existence of exigent circumstances was a question of fact reviewed for substantial evidence. *See Copeland*, 105 N.M. at 31, 727 P.2d at 1346. Examining the serious facts present in that case, this Court concluded that "[t]he evidence recited constitutes

substantial evidence of . . . exigent circumstances." *Id.* at 32, 727 P.2d at 1347. We decline to read *Copeland* as holding that dissipation of alcohol by itself is sufficient grounds to justify a warrantless home entry. Such a holding would short-circuit the reasonableness analysis and would achieve the result the United States Supreme Court went to great lengths to avoid in *Schmerber*. 384 U.S. at 770-71.

**The Police Response in This Case Was Reasonable**

{23} Although we reject a per se rule that dissipation of alcohol justifies a warrantless entry into the home, it is nevertheless a factor to consider in the reasonableness analysis. The central requirement of the Fourth Amendment is one of reasonableness. *Illinois v. McArthur*, 531 U.S. 326, 330 (2001). A court must "balance the privacy-related and law enforcement-related concerns to determine if the intrusion was reasonable." *Id.* at 331. However, "[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a warrantless search or seizure reasonable." *Id.* at 330.

{24} In *McArthur*, the United States Supreme Court examined whether police could detain a man outside his trailer for two hours while they sought and obtained a search warrant. *Id.* at 329-30. Police had received information that the man had marijuana in the trailer and were concerned that he would dispose of it before a warrant could be obtained. *Id.* at 329. Although the Court considered this an exigent circumstance, it did not end its analysis there. *Id.* at 331. Instead, the Court focused on reasonableness, balancing the state's interest in law enforcement against the privacy interests violated by the state's intrusion. *See id.* After noting that probable cause and exigent circumstances existed, the Court continued, "[T]he police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy." *Id.* at 331-32. The detention was limited, and police neither searched the trailer nor arrested the defendant before obtaining a warrant. *Id.* In other words, "the restraint at issue was tailored to [the exigency], and avoid[ed] significant intrusion into the home itself[.]" *Id.* at 331 (citation omitted). Accordingly, the Court concluded that "the restriction at issue was reasonable, and hence lawful, in light of the … circumstances[.]" *Id.*

{25} Other courts have examined the fit between the exigencies when assessing the reasonableness of police action. For example, in *United States v. Martin*, the Tenth Circuit approved of the warrantless entry into a common area of an apartment when police had reason to believe a suspect was armed. 613 F.3d 1295, 1303-04 (10th Cir. 2010). The court reasoned that "to demonstrate that officer safety concerns qualify as exigent circumstances permitting entry into a home without a warrant, the government must show (1) the officers had an objectively reasonable basis to believe that there [were exigent circumstances] *and (2) the conduct of the entry was reasonable*." *Id.* at 1303 (emphasis added) (internal quotation marks and citation omitted). Were the rule otherwise, the mere suspicion of dissipation of alcohol might allow police to storm a suspect's home with guns drawn. We do not believe this result would comport with the reasonableness requirement of the Fourth Amendment. Instead, we agree with cases like *McArthur* and *Martin* that hold that where exigent circumstances exist, the police response must be reasonably tailored to those circumstances.

**{26}** In the case before us, Defendant did not argue that the manner of his arrest was unreasonable. Nevertheless, balancing the privacy and law enforcement concerns in this case, we conclude that the officers' actions were reasonable. Our Supreme Court has noted that there is a "compelling public interest in eradicating DWI occurrences and [their] potentially deadly consequences." *Martinez*, 2010-NMSC-033, ¶ 13. Against this interest, we weigh Defendant's interest in not having police knock on his door and ask him to come out for a period of about fifteen minutes. Police did not enter Defendant's house. There is no evidence that police drew their weapons. There was no search of the premises incident to the arrest. Police were merely outside of Defendant's house for fifteen minutes. The intrusion on Defendant's rights, if any, was de minimis. Furthermore, this slight intrusion was well tailored to the exigency in this case—that evidence material to the DWI case police were investigating was dissipating. We need not and do not determine whether police would have been justified in entering Defendant's house without a warrant under these conditions. It is enough that we hold that exigent circumstances justified the actions that occurred here, and we limit our holding to the facts of this particular case. The district court erred in granting Defendant's motion to suppress.

**CONCLUSION**

**{27}** For the foregoing reasons, we reverse and remand for further proceedings consistent with this opinion.

**{28}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CELIA FOY CASTILLO, Chief Judge**

_____
**JAMES J. WECHSLER, Judge**

**Topic Index for *State v. Nance*, Docket No. 30,095**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-FE | Fundamental Error |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-FA | Fourth Amendment |
| CT-SU | Suppression of Evidence |
| | |
| **CL** | **CRIMINAL LAW** |
| CL-DG | Driving While Intoxicated |

| **CA** | **CRIMINAL PROCEDURE** |
|---|---|
| CA-EC | Exigent Circumstances |
| CA-MR | Motion to Suppress |
| CA-SZ | Search and Seizure |
| CA-WS | Warrantless Search |